# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California
County of Ventura
12/02/2025
K. Bieker
Executive Officer and Clerk

By: _____ Deputy Clerk

Maryssa Padilla

Ventura Superior Court transmitted through eFiling 12/02/2025 03:44:33 PM

ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060

WILLIAM J. EDELMAN (SBN 285177)
wedelman@milberg.com
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: 771-474-1121

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF VENTURA

| | |
|---|---|
| NINA HARRIS, individually and on behalf of all similarly situated persons,<br><br>    Plaintiff,<br><br>    v.<br><br>FANROCK, LLC d/b/a MINT & LILY, a Delaware limited liability company,<br><br>    Defendant. | Case No. _____  2025CUNP054837<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

Plaintiff Nina Harris ("Plaintiff") brings this class action complaint individually and on behalf of all others similarly situated against Fanrock, LLC d/b/a Mint & Lily ("Defendant" or "Mint & Lily"). The allegations contained in this class action complaint are based on Plaintiff's personal knowledge of facts pertaining to herself and upon information and belief, including further investigation conducted by Plaintiff's counsel, as to the remainder.

## I.        NATURE OF THE ACTION

1.        Defendant has violated California's "prohibition on advertising non-existent sales." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013). "[P]rice advertisements matter." *Id.*

2.        This is a class action lawsuit brought to address Defendant's misleading and unlawful pricing, sales, and discounting practices on its website www.MintAndLily.com. The products at issue are all goods that have at any time been offered on the website at a sale or discounted price from a higher advertised "reference price"—namely, Mint & Lily's in-house brand jewelry. Defendant advertises its products with false, misleading, and inflated comparison reference prices to deceive customers into believing the sale price is a genuine, discounted, bargain price.

3.        Anyone visiting the website who buys an item at an advertised discount from a higher comparison reference price in strikethrough text is misled. This is because that item has not been listed for sale or sold *on the website*, in the recent past and for a substantial time, at the former price. Yet Defendant's use of inflated reference prices, strikethrough pricing and discounting, and purported limited time sales all lead reasonable consumers to believe that the products in fact had been listed for sale and sold on the website, at the former and regular price, in the recent past, for a substantial time.

4.        Additionally, and alternatively, consumers are misled because the advertised reference price is not the market price. Indeed, because the products are regularly available on the website at discounted prices, the prevailing market price cannot be the higher price.

5.        On information and belief, all or nearly all the reference prices on the website are false and misleading. They are not former or regular prices at which the products were offered on the website in the recent past for a substantial time. And they are not prevailing market prices. They are inflated prices posted to lure consumers into purchasing items from Defendant.

2

CLASS ACTION COMPLAINT

6.     Beyond that, Defendant's products sold on the website not only have a market value lower than the promised former and regular price, but the market value is also lower than the discounted "sale" price. By using false reference pricing, Defendant artificially drives up demand for the products, and by extension drives up the price of the products. As a result, consumers received a product worth less than the price paid. To illustrate, assume a company knows a product will sell in the marketplace at $30. But to increase revenue and capture market share, the company advertises the product as having a regular price of $100 and being on "sale" at 60% off (i.e., $60 off). Because consumers value products based on the regular price, and a purported limited-time sale conveys savings, the company can sell that $30 product for $40.

7.     As a result, consumers are deceived into spending money they otherwise would not have spent, purchasing items they would not have purchased, and/or spending more money for an item than they otherwise would have absent deceptive marketing.

## II.     PARTIES

8.     Plaintiff Nina Harris is a resident of the State of California and County of Ventura. She also resided in Ventura County at the time she made her purchases from the website.

9.     Defendant Fanrock, LLC is the corporate owner and operator of Mint & Lily, a jewelry brand and e-commerce retailer. On information and belief, Defendant is a Delaware limited liability company whose members are all citizens of Delaware, California, and/or Texas. According to the Fanrock, LLC website, Defendant's headquarters are at 845 Market St., San Francisco, California.[1] Through the website, Defendant sells its products to consumers in California.

## III.     JURISDICTION AND VENUE

10.     This is a class action lawsuit brought pursuant to Code of Civil Procedure § 382, and this Court has jurisdiction over Plaintiff's claims because the amount in controversy exceeds this Court's jurisdictional minimum.

11.     Venue is proper under Code of Civil Procedure §§ 395(b) and 395.5 because a substantial part of the events giving rise to the claims herein occurred in this district and Plaintiff was injured in this

---

[1] https://www.fanrock.com (last accessed December 2, 2025).

3

CLASS ACTION COMPLAINT

district. Defendant marketed, sold, and shipped products to consumers located in this district, including Plaintiff. Additionally, Plaintiff is a resident of Ventura County.

12. Further, as set forth herein, Defendant has contacts in this district sufficient to subject it to the personal jurisdiction of this district as if this district were a separate state. Defendant continuously and systematically places goods into the stream of commerce for distribution in California, maintains an interactive commercial website, offers to ship products to California, and allows customers in California to order products. Exercising jurisdiction over Defendant is fair, just, and reasonable considering the quality and nature of Defendant's acts that occur in California and which affect interests located in California. Defendant has purposefully availed itself of the privilege of conducting activities in California and should reasonably anticipate being haled into court in California.

## IV.     GENERAL ALLEGATIONS

### A.     Company Background

13. Defendant owns a portfolio of companies, one of which is Mint & Lily.

14. Mint & Lily is a jewelry brand and direct-to-consumer retailer of the jewelry products.

15. The products are primarily sold direct-to-consumer by Defendant via the Mint & Lily website. According to a November 6, 2025 interview of Mint & Lily's CEO Arjun Ohri, Mint & Lily was "started in 2019" and operated as a "direct-to-consumer" product until 2025 when it expanded to selling through select retailers.[2] Thus, between 2019 and 2024, the products were sold exclusively direct-to-consumer by Mint & Lily. And as of 2025, the vast majority of products by sales volume continue to be sold direct-to-consumer by Mint & Lily.

16. Defendant highlights the unique and premium nature of its jewelry products. According to the Mint & Lily website, "We work hard to bring you the newest styles, finest materials and the pieces that will transform how you look at feel about yourself."[3]

---

[2]    https://www.mirakl.com/blog/seller-spotlight-how-mint-and-lily-is-redefining-personalized-jewelry (last accessed December 2, 2025).

[3]    https://mintandlily.com/pages/about-us (last accessed December 2, 2025).

4

17. The website further states: "We design and source everything ethically. We cut out the ridiculous middlepeople [sic] and greedy markups to deliver you the best price. And we still deliver you beautiful, quality fashionable everyday jewelry. . . . You will not find more meaningful jewelry anywhere else. Whether personalized just for you. Or curated specifically for that look you've been dying to complete. Everything has meaning and is designed to  let you do you."[4]

18. Defendant, through its website, has sold millions of units of merchandise to consumers in California and elsewhere.

**B.    Defendant's Deceptive Pricing Scheme**

**1.    The Products Are Not Regularly Listed or Sold on the Website at the Reference Prices**

19. Defendant's business model relies on deceptive reference prices and sale prices.

20. On any given date, most if not all products on the website are represented as being discounted from a substantially higher reference price. On individual listing pages or category listing pages, the supposed markdowns are represented to the consumer by prominently displaying a "crossed-out" reference price next to the sale price. Representative examples are depicted below.



*Exemplar product page dated May 23, 2024*

_____
[4] *Id.*

CLASS ACTION COMPLAINT



*Excerpt of Best Sellers category page dated December 5, 2024*

21.     To confirm that Defendant regularly offers products at a discount sitewide or nearly sitewide, 11 screenshots of the "Best Sellers" category page, randomly selected and collected by the Internet Archive's Wayback Machine, were reviewed covering September 2020 to December 2024. On 100% of these days, all products were advertised with a higher price in strikethrough text and an adjacent discounted price. Additionally, 10 randomly selected screenshots of the MintAndLily.com homepage archived by the Wayback Machine were reviewed covering January 2024 to December 2024. On 100%

6

CLASS ACTION COMPLAINT

of these days, too, all products advertised on the homepage were shown with a higher price in strikethrough text and an adjacent discounted price.

22.    There are also many examples of individual product pages confirming this deceptive advertising practice. For instance:

a. Tiny Stackable Name Ring, 18k Gold Plated

    i.  05/23/2024: $79 (reference price); $39 (discount price)

    ii.  10/29/2025: $79 (reference price); $39 (discount price)

    iii.  12/01/2025: $60 (reference price); $29 (discount price)

b. Pave Initial Pendant Necklace with Paperclip Chain, 18k Gold Plated, 18"

    i.  05/23/2024: $78 (reference price); $49 (discount price)

    ii.  09/12/2024: $78 (reference price); $49 (discount price)

    iii.  10/29/2025: $100 (reference price); $49 (discount price)

    iv.  12/01/2025: $100 (reference price); $49 (discount price)

c. Bubble Name Necklace, 18k Gold Over Sterling Silver, 16"

    i.  12/02/2024: $120 (reference price); $59 (discount price)

    ii.  08/03/2025: $120 (reference price); $59 (discount price)

    iii.  12/01/2025: $120 (reference price); $59 (discount price)

23.    This is not a new or isolated sales practice by Defendant, but continued regularly throughout 2025, 2024, 2023, 2022, and likely years earlier.

24.    Defendant employs these advertising practices to convey that the product was listed or sold on the website at the reference price in the recent past and for a substantial period of time, but is now being sold to the customer at a genuine discount.

25.    In other words, reasonable consumers understand the strikethrough reference price and sale price to convey that the product was listed or sold *on the website* at the reference price, in the recent past and for a substantial period of time, but is now being offered to the customer at a substantial discount. Reasonable consumers also expect the product is valued in the market at the former or regular price, such that consumers are receiving a genuine bargain.

CLASS ACTION COMPLAINT

26.     However, this reference price is a falsely inflated price because Defendant rarely, if ever, lists or sells items at the reference price. As a result, Defendant falsely conveys to customers that they are receiving a substantial markdown or discount.

> **2.     The Reference Price is not the Market Price, Including During the Rolling 90-Day Period Prior to Offering**

27.     Separately, the reference prices advertised on the website are not the prevailing market prices of the products.

28.     On information and belief, Defendant's products were exclusively sold by Defendant direct-to-consumer for the vast majority of the Class Period. According to a November 6, 2025 interview of Mint & Lily's CEO Arjun Ohri, Mint & Lily was "started in 2019" and operated as a "direct-to-consumer" product until 2025 when it expanded to selling through select retailers.[5]

29.     For the products sold exclusively through the Miny & Lily website (i.e., direct-to-consumer by Mint & Lily), the prevailing market price is necessarily the discounted price because Mint & Lily is the only seller.

30.     Some of Defendant's discounted products are concurrently sold on the website and through other online retailers. For these products, on information and belief, Defendant's advertised reference prices are higher than the prevailing market prices for the identical products. Because Defendant consistently sells the products at prices significantly (i.e., 30% or more) lower than its advertised former prices, there is no reasonable basis to believe that Defendant consistently sells its products at prices below the prevailing market prices. Economic principles dictate that in competitive markets the actual prices offered by vendors selling the same item tend to converge on the market price.

31.     For example, on December 1, 2025, the Mother of Pearl Heart Initial Necklace 16" was advertised on Defendant's website with a $140 reference price in strikethrough text and a $69 discount price. That same day, however, the product was offered on Amazon.com ($59 with no advertised reference price), Goody.com ($69 with no advertised reference price), and Nordstrom.com ($69

---

[5]     https://www.mirakl.com/blog/seller-spotlight-how-mint-and-lily-is-redefining-personalized-jewelry (last accessed December 2, 2025).

CLASS ACTION COMPLAINT

discounted from a $140 advertised reference price). Moreover, according to a third-party price tracker of Amazon.com, the product was consistently available on Amazon for $59 to $64 throughout June 2025 to December 2025 (see image below). So, the product was consistently available at prices far below the $140 reference price advertised on Defendant's website.



32.    Furthermore, regardless of third-party retailer prices, on information and belief Mint & Lily products are most commonly sold through Defendant's website. If a consumer searches Google for "Mint & Lily," the first organic hit is MintAndLily.com, the first sponsored hit is MintAndLily.com, and the first nine sponsored products are articles of jewelry via MintAndLily.com.

33.    On information and belief, Defendant's advertised reference prices are unsubstantiated and based on an undisclosed formula, or are outdated, or are cherrypicked and thus not representative of the prevailing market prices. Defendant does not independently verify that the reference prices are the prevailing market prices at which the products are listed for sale by Defendant (or other retailers) for a substantial period of time and in substantial quantities. And Defendant does not update the references prices on a daily basis.

**C.    Plaintiff's Purchases from the Website**

*Plaintiff Nina Harris*

34.    On September 22, 2024 and October 5, 2024, Plaintiff Harris purchased several items of jewelry from www.MintAndLily.com. Specifically, she purchased a (1) Gold Beaded Birthstone Bracelet, (2) Don't Let The Hard Days Win Beaded Inspire Bracelet, (3) Stella Dainty Multiple Name Bracelet, and (4) Don't Let The Hard Days Win Tube Bracelet.

35.    Based on and consistent with the current website and screenshots above, Plaintiff Harris

9

CLASS ACTION COMPLAINT

saw the following representations on the product listing pages:

    a.   Gold Beaded Birthstone Bracelet – regular price of $80 in strikethrough text and adjacent sale price of $39

    b.   Don't Let The Hard Days Win Beaded Inspire Bracelet – regular price of $60 in strikethrough text and an adjacent sale price of $29

    c.   Stella Dainty Multiple Name Bracelet – regular price of $120 in strikethrough text and adjacent sale price of $49

    d.   Don't Let The Hard Days Win Tube Bracelet – regular price of $70 in strikethrough text and adjacent sale price of $34

36.    Her September 22, 2024 purchase totaled $94.12 after accounting for taxes and a $29.25 discount code. Her October 5, 2024 purchase totaled $24.03 after accounting for shipping, taxes, and a $20 discount code.

37.    She proceeded to purchase the products with the understanding that she was receiving all advertised discounts off the former and regular prices charged by Defendant on the website and the products' market price.

38.    Plaintiff Harris thus viewed and relied on the website's purported current and temporary discounts. She relied on the above representations that the products (1) had a former and regular price of the stated reference price, (2) had been offered for sale *on the website* at the stated reference price in the recent past, on a regular basis, and for a substantial time, and (3) were truly being sold at a substantial discount, such that the products were valued at the false reference price.

39.    The above-listed products Plaintiff Harris purchased were not substantially marked down, and any discount had been exaggerated, as shown above.

40.    For at least the 90-day period prior to Plaintiff Harris's purchases, and months and years more, Defendant rarely, if ever, offered any of the discounted items sold on its website at the reference prices.

CLASS ACTION COMPLAINT

41.     Plaintiff would not have purchased the items at the advertised price, or would not have paid as much as she did, had Defendant been truthful. Plaintiff was persuaded to make her purchases because of the misleading discounts based on false reference prices.

42.     Plaintiff continues to be interested in purchasing jewelry offered by Defendant at significantly discounted prices, but she will be unable to trust and rely on Defendant's advertising, and so will not purchase the products from Defendant. Absent injunctive relief, Plaintiff cannot know whether Defendant's advertised reference prices represent honest prices at which the products were listed for sale on the website, on a regular basis for a reasonably substantial period of time, or if Defendant's sales are perpetual.

**D.      Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value**

43.     Academic studies support the effectiveness of Defendant's deceptive pricing scheme.

44.     "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[6] Thus, "empirical studies indicate that, *as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases*."[7]  Indeed, the Ninth Circuit observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

45.     "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[8] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[9]

---

[6] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

[7] *Id.* at 56 (emphasis added).

[8] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[9] *Id.*

CLASS ACTION COMPLAINT

46.    Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain."[10]

47.    "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[11]

48.    "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[12]   This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[13]

49.    One study quantified this economy injury, concluding that "fake list prices have a strong influence on purchase outcomes, with a *1-dollar increase in the list price having the same positive effect on purchase likelihood as a 77-cent decrease in the actual selling price*."[14]

50.    Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

**E.    Consumers Suffered Economic Harm**

51.    Defendant's discounted products sold on the website have a market value lower than the promised "regular" price, and as a result, consumers were harmed. As explained above, the reference

---

[10] Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[11] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[12] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product, 6 J. of App'd Bus. Res. 1 (1990).

[13] *Id.*

[14] Donald Ngwe, *Fake Discounts Drive Real Revenues in Retail*, Harvard Bus. Sch. (Oct. 14, 2017).

CLASS ACTION COMPLAINT

prices are false and the products rarely, if ever, are offered or sold at the reference prices. Accordingly, Defendant represented that the products had a market value of the higher reference price, but consumers did not receive products valued at that price.

52.    Consumers also paid a "price premium" for the products. If the reference prices were omitted from product listings, then consumers would not have paid as much as they did for the products (or would not have purchased the products), and Defendant would not have been able to charge the prices it ultimately did.

53.    By using false reference pricing, Defendant artificially drives up demand for the products, and by extension drives up the price of the products. As a result, consumers received a product worth less than the price paid. Reasonable consumers would not have paid the prices charged had they known that the products were rarely, if ever, offered for sale on the website (or alternatively the marketplace) at the reference prices.

54.    Again, an example illustrates the point. Assume a company knows a product will sell in the marketplace at $30. But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" at 60% off (i.e., $60 off).  Because consumers value products based on the regular price, and a sale conveys additional savings, the company can sell that $30 product for $40. Defendant has done so.

**F.    Defendant's Deceptive Pricing Practice Violates Federal Law**

55.    The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes like the ones employed by Defendant are deceptive practices that violate the FTCA.

56.    Pursuant to 16 C.F.R. § 233.1, entitled Former Price Comparisons:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the *former price* is the actual, bona fide price at which the article was offered to the public on a *regular basis* for a *reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an *artificial, inflated price* was established for the purpose of enabling the

13

CLASS ACTION COMPLAINT

subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a *reasonably substantial period of time*, in the *recent*, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level— $7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" *This is obviously a false claim*. The advertised "bargain" is not genuine.

(d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he *never offered the article at all*; he might feature a price which was *not used in the regular course of business*, or which was *not used in the recent past* but at some *remote period in the past*, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was *not maintained for a reasonable length of time*, but was immediately reduced.

57.     The FTCA also prohibits the pricing scheme employed by Defendant regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price.  Under 16 C.F.R. § 233.1:

(e) If the former price is set forth in the advertisement, *whether accompanied or not* by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

58.     The FTCA also prohibits retailers from offering fake limited duration sales.   See 16 C.F.R. § 233.5 which provides:  "[Retailers] should not . . . make a 'limited' offer which, in fact, is not limited."

14

### G.    Class Action Allegations

59.    Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Section 382 of the Code of Civil Procedure and seeks certification of the following class:

**California Class:**
All persons in California who purchased one or more items from www.MintAndLily.com, during the Class Period, at a discount from a higher advertised reference price.

60.    The California Class is collectively referred to as the "Class." Excluded from the Class are the Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest. Also excluded from the Class are persons or entities that purchased products from Defendant for purposes of resale.

61.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date a class is certified.[15]

62.    Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery. In particular, Plaintiff reserves the right to propose subclasses based on time period, product exclusivity, and sales channels.

63.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are in excess of 5,000 members of the Class.

64.    **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

---

[15] The Class Period begins at minimum 4 years from the date of filing of this action, but based on tolling, may extend beyond that date.

15

CLASS ACTION COMPLAINT

65.    **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to diligently prosecute this action.

66.    **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a.    Whether, during the Class Period, Defendant advertised false reference prices on products offered on the website.

b.    Whether, during the Class Period, Defendant advertised price discounts from false reference prices on products offered on the website.

c.    Whether the products listed on Defendant's website during the Class Period were offered at their reference prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their reference prices.

d.    Whether Defendant's deceptive pricing scheme using false reference prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq.

e.    Whether Defendant's deceptive pricing scheme using false reference prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code § 17500, et seq.

f.    Whether Defendant's use of false reference prices on products offered on their website during the Class Period was material.

g.    Whether Defendant had a duty to conspicuously disclose to customers that the reference prices were false former/regular prices.

h.    Whether the members of the Class are entitled to damages and/or restitution.

16

CLASS ACTION COMPLAINT

i. Whether injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising.

j. Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

67. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Each Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

68. **Substantial Similarity**. The products at issue in the action are substantially similar in all material respects. Namely, the products were all advertised with a false reference price in strikethrough text and a false sale price. The products are also all sold by Defendant on the website and fall under the umbrella of jewelry and accessories.

CLASS ACTION COMPLAINT

## V.    TOLLING OF THE STATUTE OF LIMITATIONS AND DELAYED DISCOVERY

69.    All applicable statutes of limitations have been tolled by the delayed discovery doctrine. Plaintiff and Class members could not have reasonably discovered Defendant's practice of running perpetual sales, based on deceptive reference prices and sale prices, at any time prior to commencing this class action litigation.

70.    A reasonable consumer viewing the website on multiple occasions would simply believe that a product is temporarily discounted.  Short of visiting and checking the website daily for many months, a reasonable consumer would not suspect that Defendant's sales and pricing practices were false and misleading. Nor would a reasonable consumer be able to ascertain the market value of the products being sold absent extensive investigation.

71.    Plaintiff did not learn of Defendant's deceptive practices alleged herein until shortly before commencing this action.

72.    As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, et seq.)

### (On Behalf of the California Class)

73.    Plaintiff restates the preceding allegations as if set forth herein.

74.    California Business and Professions Code section 17200 et seq., known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

*Fraudulent*

75.    Under the UCL, a business act or practice is "fraudulent" if it is likely to deceive members of the consuming public.

76.     Here, members of the public are likely to be deceived by Defendant's conduct as alleged above. Among other things, Defendant affirmatively misrepresented the reference prices of products,

18

CLASS ACTION COMPLAINT

which thereby misled and deceived consumers into believing that they were buying products at substantially discounted prices. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price in the recent past than they actually were and thus led to the false impression that the products were worth more than they actually were.

77.    Defendant's representations that the products were on sale, that the products had a specific former and regular prices, and that consumers were receiving genuine discounts from the reference prices, were false and misleading.

78.    In addition, Defendant had a duty to disclose the truth about its pricing deception, including, among other things, that the reference prices advertised and published on its website were not, in fact, prices at which Defendant's items were listed or sold on the website in the recent past for a reasonably substantial period of time, but in reality, the products never (or rarely) were offered or sold at the advertised reference prices. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

79.    Defendant's advertising was fraudulent because it deceives consumers into believing they are receiving a product that is worth more than it actually is.

80.    Defendant's representations were materially misleading to Plaintiff and other reasonable consumers. Consumers are influenced by price, including significant price reductions, as employed by Defendant.

81.    Plaintiff relied on Defendant's misleading representations and omissions, as detailed above, believing that she was receiving a genuine and temporary discount from the advertised reference price.

82.    Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at minimum, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

19

CLASS ACTION COMPLAINT

83.    Had the omitted information been disclosed, Plaintiff would have been aware of it and reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items she purchased from Defendant, or, at minimum, would not have paid as much for the items as she did.

84.    As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

*Unfairness*

85.    Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

86.    Defendant's deceptive marketing gave consumers the false impression that the products were regularly listed or sold on the website for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were worth more than they were.

87.    Defendant's conduct was and continues to be of no benefit to purchasers of the products, as it is misleading, unfair, unlawful, and injurious to consumers. It is also against public policy, as it harms fair competition. For example, the federal Lanham Act includes prohibitions on "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a). Similarly, the FTCA and implementing regulations prohibit advertising a former price "for the purpose of establishing a fictitious [] price on which a deceptive comparison might be based" (16 C.F.R. § 233.1) and prohibit "offer[ing] an advance sale under circumstances where they do not in good faith expect to increase the price at a later date" (16 C.F.R. § 233.5). Defendant is siphoning sales away from sellers who compete fairly on price and do not promote fake regular prices and discounts. Further, there is no benefit to consumers who pay a sale price that is actually a regular price.

20

CLASS ACTION COMPLAINT

88. The harm to Plaintiff and members of the California Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

89. As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed Class.

***Unlawful***

90. A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such action borrows violations of other laws and treats these violations as unlawful practices independently actionable under the UCL.

91. By engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations.  Specifically, as detailed herein, Defendant violated 16 C.F.R. §§ 233.1 and 233.5, and California Business & Professions Code sections 17501.

\*       \*       \*

92. In the alternative to those claims seeking remedies at law, Plaintiff and class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co*., 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury, and the need for a jury trial may result in delay and additional expense. Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where

21

the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the UCL "unlawful" and "unfair" prongs are different from those that govern legal claims.

93.    Plaintiff, on behalf of herself and the members of the Class, seeks restitution and restitutionary disgorgement of all moneys received by Defendant through the conduct described above.

94.    Plaintiff, on behalf of herself and the members of the Class, seeks an injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including putting a stop to the deceptive advertisements and false reference prices in connection with the sale of products on the website. Plaintiff and class members are entitled to injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing.

## SECOND CAUSE OF ACTION

### VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500, et seq.

### (On Behalf of the California Class)

95.    Plaintiff restates the preceding allegations as if set forth herein.

96.    The California False Advertising Law, codified at California Business & Professions Code section 17500, et seq. (the "FAL") provides, in relevant part, that it is unlawful for any business, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500. The "intent" required by

22

CLASS ACTION COMPLAINT

section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

97.    A separate section of the FAL, Cal Bus. & Prof. Code § 17501, provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a *former price* of any advertised thing, unless the alleged former price was the *prevailing market price* as above defined within *three months next immediately preceding* the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

98.    As used in Cal Bus. & Prof. Code § 17501:

- The term "prevailing market price" refers to the "retail [price] if the offer is at retail." *Id.*

- The term "advertised thing" refers to the exact same product offered—*not* an equivalent or similar product.  *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 412 (2019) ("if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features . . . the market and therefore the market price is potentially determined on the basis of sales of *that item only*.") (emphasis added).

- The term "'former price' . . . includes but is not limited to the following words and phrases when used in connection with advertised prices; 'formerly—,' 'regularly—,' 'usually—,' 'originally—,' 'reduced from ___,' 'was ___ now ___,' '___% off.'" 4 Cal. Code Regs., § 1301 (emphasis added).

- The "the three-month period is properly construed as a '*rolling*' period, that is, one whose beginning and end changes each day, thus requiring a *daily recalculation* of the prevailing market price during the three-month period." *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 416 n.26 (2019) (emphasis added).

99.    Defendant violated Cal Bus. & Prof. Code § 17500.

100.    Defendant violated Cal Bus. & Prof. Code § 17501.

101.    As explained above, Defendant routinely disseminated false and misleading reference prices on the website for the products, including to Plaintiff. Defendant rarely, if ever, offered products

23

CLASS ACTION COMPLAINT

on the website at the reference prices within the three months immediately preceding the publication of the reference prices. Additionally, the reference prices shown were not the prevailing market prices for the products in the three months immediately preceding the publication.

102.    Defendant did not verify that the advertised reference prices were the prevailing market prices within the preceding three months. On information and belief, Defendant had no policies or procedures to verify and update the reference prices on a daily basis.

103.    Defendant's marketing gave consumers the false impression that the products were regularly offered and sold for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were worth more than they were.

104.    Defendant knew that its advertised reference prices for the products sold on its website were untrue and/or misleading. Defendant knew that such products had rarely, if ever, been offered or sold on the website (or in the marketplace) at the reference prices.

105.    As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money.

106.    Plaintiff and Class members are entitled to injunctive relief. On information and belief, the dissemination of Defendant's false and misleading advertising is ongoing.

107.    In the alternative to those claims seeking remedies at law, Plaintiff and Class members allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future."). For example, equitable claims may be tried by the court, whereas legal claims are tried by jury,

CLASS ACTION COMPLAINT

and the need for a jury trial may result in delay and additional expense.  Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."). Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even in situations where damages may not be available). Furthermore, the standard, showing, and necessary elements for a violation of the FAL under Cal Bus. & Prof. Code § 17501 are different from those that govern legal claims.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,

### CAL. CIV. CODE § 1750, et seq.

### (On Behalf of the California Class)

108.    Plaintiff restates the preceding allegations as if set forth herein.

109.    The Consumer Legal Remedies Act, Cal. Civ. Code sections 1750 *et seq.* (the "CLRA"), is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

110.    Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendant's sale of products on the website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The products purchased by Plaintiff and the class are "goods" within the meaning of California Civil Code section 1761(a).

111.    Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant's products:

25

CLASS ACTION COMPLAINT

a. Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13))

b. Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9))

c. Misrepresenting that goods are of a particular standard, quality, or grade (Cal. Civ. Code § 1770(a)(7))

d. Representing that goods do have characteristics they do not actually have (Cal. Civ. Code § 1770(a)(5))

112. Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendant's products were rarely, if ever, offered for sale and/or sold *on the website* at the higher reference prices, let alone on a regular basis for a reasonably substantial period of time, (b) the advertised reference prices were not prevailing market prices because, on information and belief, the products were not predominantly offered or sold on the website or elsewhere at the reference prices for a reasonably substantial period of time, (c) the products were not valued in the market at the advertised reference prices and thus were not sold at a genuine bargain, and (d) Defendant deceptively represents the products as discounted for a limited time when in truth the discount never expires or is effectively reinstituted upon expiration.

113. Regarding section 1770(a)(9), (7), and (5), Defendant advertised products on the website with the "intent not to sell" them as advertised, and misrepresented characteristics and standards because, as explained herein, (a) the reference prices on the website misled customers into believing (i) the products were previously offered for sale and/or sold *on the website* at the higher reference prices on a regular basis for a reasonably substantial period of time, and (ii) the products were valued in the market at the advertised reference prices but were being sold at a genuine bargain, and (b) Defendant falsely represents the products as temporarily discounted when in truth the discount never expires or is effectively reinstituted upon expiration.

CLASS ACTION COMPLAINT

114.    In addition, Defendant had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices advertised on the website were not prices at which Defendant's items were regularly listed or sold on the website in the recent past, and in truth, Defendant's products are typically not offered or sold on the website (and/or in the marketplace) at the advertised reference prices. Reasonable consumers were likely to be deceived by Defendant's failure to disclose material information.

115.    Plaintiff and the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

116.    Had the omitted information been disclosed, Plaintiff and the Class reasonably would have been aware of it and behaved differently. Among other things, Plaintiff and the Class would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they did.

117.    Plaintiff, through counsel, provided notice to Defendant on December 2, 2025 pursuant to Cal. Civ. Code § 1782(a) via certified mail. Plaintiff claims no damages under this count, but will amend this Complaint after expiration of the 30-day response period to seek money damages and punitive damages under the CLRA. At this time, Plaintiff seeks only injunctive or other equitable relief under the CLRA as described above.

## FOURTH CAUSE OF ACTION

### FRAUD (INTENTIONAL MISREPRESENTATION AND OMISSION)

### (On Behalf of the California Class)

118.    Plaintiff restates the preceding allegations as if set forth herein.

119.    Plaintiff pleads this claim under California law.

120.    Defendant made false or misleading statements of fact concerning the existence and amounts of price reductions because, as explained above, (a) the reference prices misled customers into believing the products were previously offered for sale and/or sold on the website at the higher reference

CLASS ACTION COMPLAINT

prices on a regular basis for a reasonably substantial period of time, and (b) the advertised discounts are fictitious or exaggerated.

121.    In addition, Defendant had a duty to conspicuously disclose the truth about its pricing deception, including that (1) the reference prices advertised and published on the website were not prices at which Defendant's items had been offered and/or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, (2) Defendant's products rarely (if ever) were offered or sold anywhere at the advertised reference prices on a regular basis for a reasonably substantial period of time, and (3) the advertised reference prices are not indicative of market value.

122.    Defendant knew that its representations were false when made. Defendant knew that the items Plaintiff and the Class purchased had rarely, if ever, been offered or sold on the website (or elsewhere) at the substantially higher reference price.

123.    Defendant's representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

124.    Defendant engaged in this fraud to the Plaintiff and the Class's detriment to increase Defendant's own sales and profits.

125.    Plaintiff and the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant or, at minimum, would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

126.    Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or would not have paid as much for the items as they ultimately did.

127.    As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

CLASS ACTION COMPLAINT

128.    Plaintiff and the Class are also entitled to punitive or exemplary damages. Defendant, through its senior executives and officers, undertook the illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendant's actions were fraudulent because Defendant intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendant's conduct was made with malice because Defendant acted with the intent to and did cause injury to Plaintiff and the Class, and because Defendant willfully and knowingly disregarded the rights of Plaintiff and the Class.

## FIFTH CAUSE OF ACTION

## UNJUST ENRICHMENT/QUASI-CONTRACT

### (On Behalf of the California Class)

129.    Plaintiff restates the preceding allegations as if set forth herein.

130.    Plaintiff pleads this claim under California law and in the alternative to her remaining claims.

131.    California law permits a standalone claim for unjust enrichment, allowing the court to construe the cause of action as a quasi-contract claim. *Astiana v. Hain Celestial Group, Inc.,* 783 F.3d 753, 756 (9th Cir. 2015).

132.    California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020).

133.    California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable.

134.    Under California law, a stake in unjustly earned profits exists regardless of the plaintiff's actual loss.

135.    By its wrongful acts and omissions, Defendant was unjustly enriched at the expense of and to the detriment of Plaintiff and the Class and/or while Plaintiff and the Class were unjustly deprived. Defendant's unlawful and deceptive pricing scheme induced Plaintiff and the Class to spend money they

29

CLASS ACTION COMPLAINT

otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

136.    Plaintiff and members of the Class also conferred a monetary benefit on Defendant in the form of Defendant's profits generated by the deceptive marketing scheme.  Defendant profited from inappropriately and artificially inflated prices.

137.    On behalf of the Class, Plaintiff seeks restitution from Defendant and an order disgorging all deceptively obtained payments and profits.

138.    Plaintiff and the Class seek this equitable remedy because their legal remedies are inadequate. An unjust enrichment theory provides the equitable disgorgement of profits even where an individual has not suffered a corresponding loss in the form of money damages.

**SIXTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(On Behalf of the California Class)**

139.    Plaintiff restates the preceding allegations as if set forth herein.

140.    Plaintiff pleads this claim under California law.

141.    Defendant made false or misleading statements of fact concerning the existence of and the amounts of price reductions because, as explained herein, (a) the advertised reference prices misled customers into believing the products were previously offered for sale and/or sold *on the website* at the higher reference prices on a regular basis for a reasonably substantial period of time, and (b) the advertised discounts are fictitious or exaggerated.

142.    In addition, Defendant had a duty to conspicuously disclose the truth about its pricing deception, including that the reference prices advertised on the website were not prices at which Defendant's items were listed or sold on the website in the recent past on a regular basis for a reasonably substantial period of time, and in truth, Defendant's products are typically not offered or sold on the website (and/or in the marketplace) at the advertised reference prices.

143.    Defendant knew that its representations were false when made. Defendant knew that the items Plaintiff and the Class purchased had rarely, if ever, been offered or sold on the website at the

30

CLASS ACTION COMPLAINT

substantially higher reference price in the recent past.  And Defendant knew or should have known that the reference prices were not the prevailing market prices.

144.    Defendant had no good faith or reasonable basis to believe that its representations were true when made.

145.    Defendant's representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme.

146.    Defendant engaged in this deception to the Plaintiff and the Class's detriment to increase Defendant's own sales and profits.

147.    Plaintiff and the Class reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendant, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

148.    Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently. Among other things, they would not have purchased the items they purchased from Defendant or, at the very least, would not have paid as much for the items as they did.

149.    As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for following relief:

    a.  Certification of this case as a class action on behalf of the proposed Class and any subclasses defined above, appointment of Plaintiff as Class representative, and appointment of their counsel as Class counsel;

    b.  An award to Plaintiff and the proposed Class and subclasses of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits

CLASS ACTION COMPLAINT

Defendant obtained from each Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

c.  An injunction ordering Defendant to cease the false advertising and unfair business practices complained of herein;

d.  An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

e.  An award of nominal, punitive, and statutory damages where available;

f.  Reasonable expenses and attorneys' fees;

g.  Pre- and post-judgment interest, to the extent allowable; and

h.  For such further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the proposed Class, demand a trial by jury for all claims so triable.

Dated:  December 2, 2025              MILBERG, PLLC


                                      By: */s/ Alexander E. Wolf*
                                          ALEXANDER E. WOLF
                                          WILLIAM J. EDELMAN
                                          Attorneys for Plaintiff

32

CLASS ACTION COMPLAINT

ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060

WILLIAM J. EDELMAN (SBN 285177)
wedelman@milberg.com
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: 771-474-1121

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF VENTURA

| | |
|---|---|
| NINA HARRIS, individually and on behalf of all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>FANROCK, LLC d/b/a MINT & LILY, a Delaware limited liability company,<br><br>Defendant. | **CLRA VENUE DECLARATION** |

OpenSign™ DocumentId: sdmXPVeaSo

I, Nina Harris, declare as follows:

1.      I am a class action Plaintiff in this matter and an individual over eighteen years of age.  I make this declaration as required by California Civil Code § 1780(d).

2.      The Complaint in this action is filed in a proper place because a substantial portion of the transactions alleged in the Complaint occurred in this district. I purchased the products at issue from Mint & Lily's website while present in Ventura County, CA. The products were also shipped to my address in Ventura County, CA. As such, it is my understanding that Defendant does business in this county and district, too.

3.      I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct.

Dated: December 2, 2025

*Nina Harris*

Nina Harris

2

CLRA VENUE DECLARATION

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*



**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Ventura
12/02/2025
K. Bieker
Executive Officer and Clerk
By: _____ Deputy Clerk
Maryssa Padilla

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Fanrock, LLC d/b/a Mint & Lily

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Nina Harris

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* 800 South Victoria Avenue

Ventura, CA 93009

CASE NUMBER:
*(Número del Caso):*
2025CUNP054837

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alexander E. Wolf, Milberg, PLLC, 280 S Beverly Dr.-Penthouse, Beverly Hills, CA 90212

DATE:
*(Fecha)* 12/02/2025
Clerk, by K. Bieker *(Secretario)* _____ Maryssa Padilla, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Ventura Superior Court transmitted through eFiling 12/02/2025 03:44:33 PM

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Alexander E. Wolf (SBN 299775)
Milberg, PLLC, 280 South Beverly Drive-Penthouse, Beverly Hills, CA 90212

TELEPHONE NO.: 872-365-7060    FAX NO. :
EMAIL ADDRESS: awolf@milberg.com
ATTORNEY FOR *(Name):* Nina Harris

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA**
STREET ADDRESS: 800 South Victoria Avenue
MAILING ADDRESS: 800 South Victoria Avenue
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Ventura Hall of Justice

CASE NAME:

**FOR COURT USE ONLY**

ELECTRONICALLY FILED
Superior Court of California
County of Ventura
12/02/2025
K. Bieker
Executive Officer and Clerk
By: _____ Deputy Clerk
Maryssa Padilla

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 2025CUNP054837 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) / [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[x] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [x] Substantial amount of documentary evidence
    d. [x] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4.  Number of causes of action *(specify):*
5.  This case [x] is  [ ] is not  a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: December 2, 2025
Alexander E. Wolf
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
*   Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
*   File this cover sheet in addition to any cover sheet required by local court rule.
*   If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
*   Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

Ventura Superior Court transmitted through eFiling 12/02/2025 03:44:33 PM

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>MILBERG, PLLC<br>Alexander E. Wolf SBN 299775<br>280 South Beverly Drive, Penthouse<br>Beverly Hills, CA 90212<br>　　　TELEPHONE NO: 872-365-7060　　FAX NO *(Optional)*:<br>　E-MAIL ADDRESS *(Optional)*: awolf@milberg.com<br>　ATTORNEY FOR *(Name)*: Plaintiff | *FOR COURT USE ONLY*<br>**ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Ventura<br>12/11/2025<br>K. Bieker<br>Executive Officer and Clerk<br>By: _____ Deputy Clerk<br>Joan Foster |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF　Ventura
　STREET ADDRESS:　800 S. Victoria Avenue
　MAILING ADDRESS:
　CITY AND ZIP CODE:　Ventura, 93009-0001
　BRANCH NAME:　Ventura

| | |
|---|---|
| PLAINTIFF / PETITIONER:　NINA HARRIS, et al.<br>DEFENDANT / RESPONDENT:　FANROCK, LLC | CASE NUMBER:<br>2025CUNP054837 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>14730425 (26910757) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
　a. [X] Summons
　b. [X] Complaint
　c. [X] Alternative Dispute Resolution (ADR) Package
　d. [X] Civil Case Cover Sheet *(served in complex cases only)*
　e. [ ] Cross-Complaint
　f. [X] Other *(specify documents)*:　Notice of Case Assignment

3. a. Party served *(specify name of party as shown on documents served)*:
　　FANROCK, LLC d/b/a MINT & LILY, a Delaware limited liability company
　b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
　　CT Corporation System - Jaqueline Mejia, Intake Specialist - Person Authorized to Accept Service of Process

4. Address where the party was served:
　330 N Brand Blvd Suite 700, Glendale, CA 91203

5. I served the party *(check proper box)*
　a. [X] **by personal service**. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:　Mon, Dec 08 2025　　(2) at *(time)*:　12:40 PM
　b. [ ] **by substituted service**. On *(date)*:　　　at *(time)*:　　　I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

　　(1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
　　(2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
　　(3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
　　(4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:　　from *(city)*:　　　or [ ] a declaration of mailing is attached.
　　(5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Ventura Superior Court transmitted through eFiling 12/11/2025 08:44:33 AM

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Page 1 of 2<br>Code of Civil Procedure, § 417.10 |

| PLAINTIFF / PETITIONER:    NINA HARRIS, et al.<br>DEFENDANT / RESPONDENT:    FANROCK, LLC | CASE NUMBER:<br>2025CUNP054837 |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date)*:          (2)  from *(city)*:

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section)*:

    ☐  Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of *(specify)*:

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify)*:    FANROCK, LLC d/b/a MINT & LILY, a Delaware limited liability company

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| ☒ other:   Corp. Code 17701.16, LLC | |

7. **Person who served papers**

  a.  Name:          Zoe Roller

  b.  Address:        1400 North McDowell Blvd Suite 300, Petaluma, CA  94954

  c.  Telephone number:    800-938-8815

  d.  **The fee** for service was:  $50.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☒  a registered California process server:

        (i)  ☐ owner  ☐ employee  ☒ independent contractor

        (ii)  Registration No:  2023100296

        (iii)  County:  Los Angeles

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:   December 10, 2025

Zoe Roller
_____
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
1400 North McDowell Blvd Suite 300,
Petaluma, CA  94954
800-938-8815

_____
(SIGNATURE)